UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EDDIE LEE REESE,

    Plaintiff,

v.                                                                 CASE NO. 6:11-cv-652-Orl-31KRS

DOMINIC P. BESSE, et al.,

    Defendants.

## ORDER

This case is before the Court on Defendants Seth Killian and Dominic Besse's ("Defendants") Joint Motion for Summary Judgment (Doc. No. 31), and Plaintiff's Motion for Summary Judgment (Doc. No. 43).[1]  As discussed hereinafter, Defendants' Motion for Summary Judgment is granted.

## I.   *Factual Background*[2]

Plaintiff Eddie Lee Reese ("Plaintiff"), proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 against Defendants alleging that they used excessive force in violation of his Fourth and Eighth Amendment rights.

---

[1] The Court construes Plaintiff's Motion for Summary Judgment to be a response in opposition to Defendants' Joint Motion for Summary Judgment and will direct the motion to be terminated.

[2] The statement of facts is derived from the Amended Complaint (Doc. No. 6), the sworn statements made by the Defendants (Doc. No. 31-2), and Plaintiff's deposition (Doc. No. 32-1).

On October 5, 2009, Defendants Seth Killian ("Defendant Killian") and Dominic Besse ("Defendant Besse"), police officers with the Daytona Beach Police Department, arrived at Plaintiff's apartment in response to a call they received indicating that Plaintiff had committed a battery on his girlfriend, Amy Marcus-Pina ("Marcus-Pina"), by manually strangling her (Doc. Nos. 31-1, 31-3).[3]  Defendants attest that they were wearing their standard issue police uniforms when they approached Plaintiff, who was outside in the front yard (Doc. Nos. 31-1 at 2; 31-2 at 1, 5).  Defendant Killian asked Plaintiff, "Hey, what's going on between you and Amy?" (Doc. No. 31-1 at 2).  Plaintiff responded, "F--k you, get that light off of me and out of my face!" *Id.*  Defendant Killian asked Plaintiff several times for identification, however, Plaintiff refused to comply and acted extremely hostile.  *Id.*

Defendant Besse also asked Plaintiff for identification, and Plaintiff yelled at the officers using vulgar language.  *Id.*  Defendant Besse attested in the police report that he explained to Plaintiff why the officers were at his house, but Plaintiff refused to cooperate and continued to yell at them.  *Id.*  When Defendant Besse attempted to place Plaintiff in handcuffs, Plaintiff pulled away and took a defensive stance.  *Id.* at 3.  Defendant Besse then tried to place Plaintiff on the ground, but Plaintiff pushed Defendant Besse away and balled his hands into fists.  *Id.*  Plaintiff charged at Defendant Besse, and Defendant Killian responded by attempting to place Plaintiff on the ground.  *Id.*  Plaintiff struck Defendant

---

[3]Plaintiff and Marcus-Pina lived together in an apartment located in Daytona Beach, Florida despite the fact that Plaintiff had been served with a domestic violence injunction that required him to stay away from Marcus-Pina.  *Id.*; *see also* Seventh Judicial Circuit Court for Volusia County case number 2008-34068-FMCI.

2

Killian with his elbow, stood up, and again took a defensive stance while screaming at the officers. *Id.*

Defendant Besse then deployed his department-issued Taser. *Id.*[4] One probe struck Plaintiff's chest but appeared to have no effect.[5] *Id.* According to Defendants, Plaintiff became enraged, and as a result, Defendant Killian deployed his Taser, which struck Plaintiff in two locations and incapacitated him. *Id.* Defendant Besse then handcuffed Plaintiff and placed him under arrest. *Id.*

Plaintiff recounts a different version of events. Plaintiff stated in his deposition that he left work around 10:00 p.m. and went to the "Second Avenue Store" where he purchased a six-pack of beer (Doc. No. 32-1 at 26-27). Plaintiff drank several of the bottles of beer and a small bottle of Jack Daniels that he had purchased before arriving home. *Id.* at 27, 29-30. When he reached his apartment, he finished the remaining beer and got into an argument with Marcus-Pina. *Id.* at 30-31. According to Plaintiff, both he and Marcus-Pina were intoxicated. *Id.* at 32-33. Marcus-Pina left the apartment, and after 10 to 15 minutes, Plaintiff left to find her. *Id.* at 37.

Plaintiff walked outside and down the front steps where he was confronted by two men shining flashlights in his face. *Id.* at 47, 59; Doc. No. 6 at 12. Plaintiff is blind in his left eye and could not see who the men were. *Id.* at 59. The men did not identify themselves

---

[4]Taser is "[a] trademark for a high-voltage stun gun." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1291 n.1 (11th Cir. 2009); *see also Fils v. City of Aventura*, 647 F.3d 1272, 1276 n.2 (11th Cir. 2011).

[5]It was later discovered a second probe hit Plaintiff's belt buckle. *Id.*

(Doc. No. 6 at 12). Plaintiff told the men either to "get the damn light out of my face" or to "get them f--kin' lights out my face" (Doc. No. 32-1 at 59, 62). The men did not move the lights and asked him what had happened to Amy. *Id.* at 61. The men also asked him for identification. *Id.* at 64-65. Before Plaintiff could get his identification, one of the men grabbed Plaintiff and tried to throw him to the ground. *Id.* at 65.

Plaintiff admitted that he knew the men were police officers when they attempted to place him in handcuffs. *Id.* at 71-72.[6] At that point, Plaintiff yanked his hand away from the men. *Id.* at 75. One man grabbed Plaintiff's arm, and they fell to the ground. *Id.* at 76-78, 80. Plaintiff was then tased by one of the officers. *Id.* at 78. Plaintiff stated that he never tried to strike the men nor did he struggle while on the ground. *Id.* at 79-80. Plaintiff explained that the Taser sent his body "into shock"; his body began shaking, and his actions were aggressive. *Id.* at 83. After being tased, Plaintiff stood up, and one of the men tased him a second time. *Id.* at 84-87. Plaintiff stated that he never fought with the men nor did he ball his hands into fists. *Id.* The second Taser application incapacitated Plaintiff, and he could not recall what happened until he was handcuffed and placed into a police vehicle. *Id.* at 88-89.

Although Plaintiff admitted that he was intoxicated on October 5, 2009, he stated that he did not act in a hostile manner. *Id.* at 92-93. Plaintiff also admitted that when he drinks alcohol, he speaks loudly or yells. *Id.* at 109. Nonetheless, Plaintiff denied yelling at Defendants. Plaintiff also denied cursing at the officers but then admitted to using the

---

[6]Later in his deposition Plaintiff contradicted this statement. *Id.* at 80-81.

f-word. *Id.* at 112.

Plaintiff pled no contest and was convicted of resisting an officer with violence. *Id.* at 105. He was sentenced to three years in prison. *Id.*

## II.     *Summary Judgment Standard*

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp. 2d 1347, 1351-52 (M.D. Fla. 2003). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324-25 (internal quotations and citations omitted). Thereafter, summary judgment is mandated against the

non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value") (citations omitted); *Broadway v. City of Montgomery*, 530 F.2d 657, 660 (5th Cir. 1976).

## III. Discussion

Plaintiff alleges that Defendants violated his Fourth and Eighth Amendment rights by using excessive force when they unnecessarily tased him twice.[7] Defendants contend that they are entitled to qualified immunity (Doc. No. 31 at 1). In support of their motion, Defendants argue that no constitutional violation occurred because the force employed was objectively reasonable. *Id.* at 12.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (quotation omitted). "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation,

---

[7] In an excessive force case arising out of an arrest or an investigatory stop, the claim is analyzed under the Fourth Amendment. *Graham v. O'Connor*, 490 U.S. 386, 394-95 (1989); *Reese v. Herbert*, 527 F.3d 1253, 1262 n. 11 (11th Cir. 2008). Therefore, the Court will not consider Plaintiff's Eighth Amendment claim.

protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *McCullough v. Antolini,* 559 F.3d 1201, 1205 (11th Cir. 2009) (citations omitted) (quotations omitted). To receive qualified immunity a defendant must first prove he or she was acting within the scope of his or her discretionary authority. *See Vineyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).

Once a defendant shows that he or she was acting within his or her discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate. *Lumley v. City of Dade City*, 327 F.3d 1186, 1194 (11th Cir. 2003). The Supreme Court has set forth a two-part test for the qualified immunity analysis. First, a court must determine "whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). If Plaintiff's version of the facts set forth the violation of a constitutional right, the next step is to ask whether the right was clearly established at the time of the alleged conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). It is within a court's discretion to decide which prong of the qualified immunity analysis to address first. *See Pearson*, 555 U.S. at 236.

Based on the allegations in the amended complaint and the evidence presented, the Court concludes that Defendants were acting in the scope of their discretionary authority when the incident occurred. Accordingly, the Court will consider whether Plaintiff has demonstrated a constitutional violation.

In an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's "objective reasonableness" standard.

*Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (citing *Tennessee v. Garner*, 471 U.S. 1 (1985) and *Graham v. Connor*, 490 U.S. 386 (1989)).  A genuine "excessive force" claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest.  *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006).  The Court must "carefully balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests." *Mann*, 588 F.3d at 1305 (quotation omitted).  Officers may use force that is "necessary in the situation at hand." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002).  To determine whether an officer's use of force was objectively reasonable, a court must examine the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect actively resisted arrest or attempted to evade arrest by flight.  *Brown v. City of Hunstville*, 608 F.3d 724, 738 (11th Cir. 2010) (quotation omitted).

The Eleventh Circuit has further stated that federal courts should consider an officer's actions "from the perspective of a reasonable officer on the scene, rather than through the lens of hindsight." *Harper*, 459 F. App'x at 825 (quotation omitted); *Terrell v. Smith*, 668 F.3d 1244, 1251 (11th Cir. 2012).  Police officers can be forced to make "split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Terrell*, 668 F.3d at 1251 (quoting *Graham*, 490 U.S. at 396).

Although Plaintiff was accused of committing a severe crime against Marcus-Pina (felony battery), Plaintiff disputes that he posed an immediate threat to the safety of the

officers or actively resisted arrest.  Plaintiff admits that he was highly intoxicated during his encounter with Defendants; however, he denies struggling with the officers, hitting an officer with his elbow, assuming a fighting stance, and balling his hands into fists.  Plaintiff only admits to pulling away from Defendant Besse.  Plaintiff further contends that he is blind in one eye, and due to the darkness of the area and Defendants' actions of shining flashlights in his eyes, he could not tell who was speaking to him.  Plaintiff also maintains, contrary to Defendants' attestations, that Defendants did not identify themselves as police officers.  As a result, Plaintiff contends that he was unaware of Defendants' status as law enforcement officers.  Thus, at first glance it appears there are disputed issues of genuine fact.

Plaintiff's attempts to create factual disputes, however, are estopped by his conviction for resisting an officer with violence in violation of section 843.01, Florida Statutes.[8]  Therefore, the disputed issues of whether Plaintiff was aware Defendants were law enforcement officers and actively resisted arrest by doing violence were actually litigated in the state court and cannot be relitigated in this action.  *See City of Riviera Beach*

---

[8]The Seventh Judicial Circuit Court for Volusia County's website confirms that Plaintiff entered a nolo contendere plea and was convicted of this charge.  The entry of a plea of nolo contendere has the same legal effect in a criminal proceeding as a plea of guilty.  *Head v. Sec'y, Dep't. of Corr.*, No. 2:07-cv-272-FtM-36SPC, 2010 WL 3565720, at *4 (M.D. Fla. Sept. 9, 2010) (citing *Hudson v. United States*, 272 U.S. 451, 455 (1926) (stating that a plea of nolo contendere is, like a plea of guilty, an admission of guilt for the purposes of the case); *Carter v. Gladish*, No. 8:03-cv-1194-T-17TBM, 2005 WL 1712263, at *9 (M.D. Fla. July 21, 2005) (noting under Florida law a plea of nolo contendere has the same legal effect in a criminal proceeding as a guilty plea).

*v. That Certain Unnamed Gray, Two Story Vessel Approximately Fifty-Seven Feet in Length*, 649 F.3d 1259,1273-74 (11th Cir. 2011); *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008) (defensive collateral estoppel may be used "in the criminal-to-civil context [,] . . . . But collateral estoppel does not apply where one of the issues forming the basis of the civil lawsuit was not necessarily resolved in the prior criminal proceedings."); *Vasquez v. Metro. Dade County*, 968 F.2d 1101, 1106 (11th Cir. 1992) (stating that "defensive collateral estoppel may be used to prevent a criminal defendant, as a plaintiff, from relitigating the same issue which has been litigated in prior criminal proceedings"); *Harris v. Kado*, 391 F. App'x 560, 564 (7th Cir. 2010) (acknowledging that issue preclusion is an affirmative defense but finding that a court may *sua sponte* consider this defense).[9]

Viewing Plaintiff's arrest in light of the evidence presented, the Court concludes that based on the totality of the circumstances, Defendants' use of force was objectively reasonable. The Eleventh Circuit has held that "a single use of the taser gun" to effectuate an arrest does not constitute excessive force because the "one-time shocking was reasonably proportionate to the need for force" given the suspect's repeated refusals to comply with the officer's verbal commands. *See Draper v. Reynolds*, 369 F.3d 1270, 1277-78 (11th Cir. 2004). Further, the Eleventh Circuit has upheld multiple uses of a Taser in situations where a plaintiff resists arrest. *See Mann*, 588 F.3d at 1291 (concluding the tasing of the plaintiff three times, which led to her eventual death, did not amount to excessive

---

[9]The Court notes that Defendants raised the defense of collateral estoppel in their Answers to the Amended Complaint (Doc. Nos. 22 and 23), however, counsel for Defendants did not raise this issue in the motion for summary judgment.

force where the plaintiff was excessively combative with the defendants by attempting to kick, hit, head butt, and spit on them, kicking out a window of a patrol car and failing to comply with police orders); *Buckley v. Haddock*, 292 F. App'x 791, 794-95 (11th Cir. 2008) (holding that the deployment of a Taser three times did not violate the plaintiff's Fourth Amendment rights where the plaintiff, after being handcuffed, dropped to the ground, refused to stand or enter the patrol car, and was warned that if he did not comply with the officer, he would be tased).

Defendants suspected Plaintiff of committing a violent crime against Marcus-Pina. Further, Plaintiff admits that he resisted Defendant Besse's attempt to handcuff him. Plaintiff then refused to comply with Defendants' commands and resisted the officers' attempts place him under arrest. Defendants were met with escalating violence as Plaintiff first struggled with Defendant Besse, then pushed him, and struck Defendant Killian with his elbow. Defendant Besse deployed his Taser, and it had no effect. Plaintiff admitted that he then stood up a second time, and Defendant Killian deployed his Taser, which incapacitated Plaintiff. Thus, Plaintiff clearly resisted the officers and posed a threat to the their safety. Defendants' use of a Taser on Plaintiff was appropriate given the circumstances of his arrest. The Court concludes that Defendants' use of force was justified in this case.

Plaintiff has not demonstrated that Defendants violated his Fourth Amendment rights. Accordingly, Defendants are entitled to qualified immunity, and summary judgment is granted in their favor.

11

Accordingly, it is **ORDERED AND ADJUDGED** as follows:.

1. Defendants Killian and Besse's Joint Motion for Summary Judgment (Doc. No. 31) is **GRANTED**.

2. The Clerk of Court is directed to terminate Plaintiff's Motion for Summary Judgment (Doc. No. 43).

3. The Clerk of Court is directed to enter a judgment in favor of Defendants and close the case.

**DONE AND ORDERED** at Orlando, Florida, this 19th day of December, 2012.

*[signature]*
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-3 2/28
Counsel of Record
Eddie Lee Reese